**FILED**

At Albuquerque, NM

FEB 12 2025

MITCHELL R. ELFERS
CLERK

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

       Plaintiff,

    vs.

**NEILL ELSMAN,**

       Defendant.

Cr. No. 25-259 MLG

## PLEA AGREEMENT

Pursuant to Rule 11, Fed. R. Crim. P., the parties notify the Court of the following agreement between the United States of America, by the United States Attorney for the District of New Mexico, and the Defendant, Neill Elsman, with the advice and counsel of his attorney, Shah Torgoley. This agreement is limited to the United States Attorney's Office for the District of New Mexico and does not bind any other federal, state, or local agencies or prosecuting authorities.

## REPRESENTATION BY COUNSEL

1.     The Defendant understands the Defendant's right to be represented by an attorney and is so represented. The Defendant has thoroughly reviewed all aspects of this case with the Defendant's attorney and is fully satisfied with that attorney's legal representation.

## RIGHTS OF THE DEFENDANT

2.     The Defendant further understands the Defendant's rights:

    a.     to be prosecuted by indictment;

    b.     to plead not guilty, or having already so pleaded, to persist in that plea;

1

c.      to have a trial by jury; and

d.      at a trial:

     i.      to confront and cross-examine adverse witnesses,

     ii.     to be protected from compelled self-incrimination,

     iii.    to testify and present evidence on the Defendant's own behalf, and

     iv.     to compel the attendance of witnesses for the defense.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

3.      The Defendant agrees to waive these rights and to plead guilty to Count 1 of the information, charging a violation of 18 U.S.C. § 1951(a), that being Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official Right; Count 2 of the information, charging a violation of 18 U.S.C. § 1951(a), Interference with Commerce by Extortion Under Color of Official Right; and Counts 3 through 5 of the information, charging a violation of 18 U.S.C. § 666(a)(1)(B), that being Receiving a Bribe as an Agent of an Organization Receiving Federal Funds.

## SENTENCING

4.      As to Counts 1 and 2 in the information, the Defendant understands that the maximum penalty provided by law for this offense is:

a.      imprisonment for a period of not more than 20 years;

b.      a fine not to exceed the greater of $250,000 or twice the pecuniary gain to the Defendant or pecuniary loss to the victim;

c.      a term of supervised release of not more than three years to follow any term of imprisonment. (If the Defendant serves a term of imprisonment, is then released on supervised release, and violates the conditions of supervised

release, the Defendant's supervised release could be revoked — even on the
last day of the term — and the Defendant could then be returned to another
period of incarceration and a new term of supervised release.);

d.    a mandatory special penalty assessment of $100.00; and

e.    restitution as may be ordered by the Court.

5.    As to Counts 3 through 5 in the information, the Defendant understands that the
maximum penalty provided by law for this offense is:

a.    imprisonment for a period of not more than 10 years;

b.    a fine not to exceed the greater of $250,000 or twice the pecuniary gain to the
Defendant or pecuniary loss to the victim;

c.    a term of supervised release of not more than three years to follow any term of
imprisonment. (If the Defendant serves a term of imprisonment, is then
released on supervised release, and violates the conditions of supervised
release, the Defendant's supervised release could be revoked — even on the
last day of the term — and the Defendant could then be returned to another
period of incarceration and a new term of supervised release.);

d.    a mandatory special penalty assessment of $100.00; and

e.    restitution as may be ordered by the Court.

6.    The parties recognize that the federal sentencing guidelines are advisory and that
the Court is required to consider them in determining the sentence it imposes. The Defendant
further recognizes that while the Defendant's attorney may have made a prediction or estimate of
the sentence that the Court may impose, the Defendant understands that the Court is not bound
by any such estimate or prediction.

3

## ELEMENTS OF THE OFFENSE

7.      If this matter proceeded to trial, the Defendant understands that the United States would be required to prove, beyond a reasonable doubt, the following elements for violations of the charges listed below:

Count 1: 18 U.S.C. § 1951(a), that being Conspiracy to Commit Interference with Commerce by Extortion Under Color of Official Right:

| | |
|---|---|
| *First*: | The defendant agreed with at least one other person to commit interference with commerce by extortion under color of official right; |
| *Second*: | The defendant knew the essential object of the conspiracy; |
| *Third*: | The defendant knowingly and voluntarily participated in the conspiracy; and |
| *Fourth:* | There was interdependence among the members of the conspiracy; that is, the members, in some way or manner, intended to act together for their shared mutual benefit within the scope of the conspiracy charged. |

Count 2: 18 U.S.C. § 1951(a), that being Interference with Commerce by Extortion Under Color of Official Right:

| | |
|---|---|
| *First*: | The defendant wrongfully obtained property from another with consent; |
| *Second*: | The defendant involved in the commission of the offense did so under color of official right; and |
| *Third*: | The conduct affected interstate commerce. |

Counts 3 through 5: 18 U.S.C. § 666(a)(2), that being Receiving a Bribe as an Agent of an Organization Receiving Federal Funds:

| | |
|---|---|
| *First*: | The defendant was an agent of a local government agency, that being the Albuquerque Police Department (APD); |

(1)(b)

SD/*e* SDC KBW

| | |
|---|---|
| *Second*: | The defendant solicited, demanded, accepted or agreed to accept anything of value from another person; |
| *Third*: | The defendant did so corruptly, that is, with the understanding that something of value is to be offered or given to reward or influence him in connection with his official duties; |
| *Fourth:* | The defendant acted with the intent to be influenced or rewarded in connection with some business, transaction, or series of transactions of the government agency; |
| *Fifth:* | That this business, transaction, or series of transactions involved a thing of value of $5,000 or more; and |
| *Sixth:* | The government agency, in a one-year period, received benefits of more than $10,000 under any Federal program involving a grant, contract subsidy, loan, guarantee, insurance or other assistance. |

## DEFENDANT'S ADMISSION OF FACTS

8.    By my signature on this plea agreement, I am acknowledging that I am pleading guilty because I am, in fact, guilty of the offense(s) to which I am pleading guilty. I recognize and accept responsibility for my criminal conduct. Moreover, in pleading guilty, I acknowledge that if I chose to go to trial instead of entering this plea, the United States could prove facts sufficient to establish my guilt of the offense(s) to which I am pleading guilty beyond a reasonable doubt, including any facts alleged in the information that increase the statutory minimum or maximum penalties. I specifically admit the following facts related to the charges against me, and declare under penalty of perjury that all of these facts are true and correct:

9.    I joined the Albuquerque Police Department (APD) as a sworn law enforcement officer in 2014. When I swore my oath as an APD officer, I swore to enforce the laws of the state of New Mexico and to perform all duties to the best of my ability. Additionally, as an APD officer, I was required to adhere to the Personnel Code of Conduct, which required, among other

things, to act in a manner that would not cast doubt of my integrity, honesty, moral judgment, or character.

10.     I joined the APD driving while intoxicated (DWI) unit in September 2019. As part of my experience working as an APD officer in the DWI unit, I am aware of and am familiar with the DWI laws and regulations in New Mexico. I understand that there are state criminal charges associated with DWI arrests, and that there are administrative proceedings handled through the Motor Vehicle Department (MVD) related to the revocation of the persons' driver's licenses (the MVD proceedings).

11.     I admit that since 2021, contrary to my oath as an officer and APD's Code of Conduct, I conspired RICARDO MENDEZ, who worked as an investigator for co-conspirator 1, a criminal defense attorney who ran a law firm specializing in DWI defense, co-conspirator 1, and other officers (the "Conspiring Officers") to engage in a scheme that targeted persons arrested for DWI (DWI Offenders). Under this scheme, co-conspirator 1, MENDEZ, and I would arrange for me to intentionally fail to appear at required criminal and administrative settings associated with the DWI-related arrests, allowing co-conspirator 1 to move to dismiss the proceedings. I further admit that I was aware that other Conspiring Officers similarly coordinated with co-conspirator 1 and MENDEZ to intentionally fail to appear as required at DWI-related settings.

12.     As part of the scheme, DWI Offenders, both aware and unaware of the scheme, retained co-conspirator 1 as their attorney following their DWI arrests. Co-conspirator 1 and/or MENDEZ consulted with the DWI Offender about retaining co-conspirator 1 as their attorney. After the DWI Offender hired Clear, I was paid in cash to agree not to perform my duties on the

6

particular DWI Offender's case. MENDEZ typically handled communications with me to negotiate payment amounts and to arrange meetings to exchange payments.

13.    In terms of the payment amount the Conspiring Officers would receive, I admit that there was generally a set amount, but there were also exceptions depending on various factors, including the circumstances of the DWI arrest, the DWI Offender's criminal history (specifically if the offender was facing felony DWI charges based on their prior DWI convictions), the amount of money the DWI Offender appeared to have, and the DWI Offender's personal relation to conspiracy members.

14.    I understood that co-conspirator 1 and MENDEZ also provided non-cash rewards to DWI officers, such as Christmas gifts, though I did not receive any personally. I understood that these gifts, while not tied to a particular case, were given to DWI officers to develop goodwill.

15.    To execute the scheme, I admit that we (the co-conspirators) developed a system to coordinate the scheduling of the MVD hearing and criminal settings to ensure that I, as an Conspiring Officer, would be able to miss the required settings, which, in turn, allowed co-conspirator 1 to use my failure to appear as a basis to request dismissal of the proceeding even though co-conspirator 1 was aware that I had been paid to not appear. Once the DWI Offender retained co-conspirator 1, co-conspirator 1, MENDEZ, and I would coordinate my non-appearance at required settings on the state criminal case and the MVD administrative proceeding.

16.    I further admit that I accepted payment from co-conspirator 1 and MENDEZ close in time to the date that a DWI Offender was arrested and agreed to interfere in criminal and administrative proceedings before knowing whether my non-appearance would be tied to any

7

family or military leave by the time the case was dismissed. Had I not been on leave at the time

of a DWI Offender's settings, I agreed in advance not to appear in exchange for the payments I

received.

17.     When I agreed to fail to appear as arranged, I admit that I knew that co-

conspirator 1 would move to dismiss the criminal case and the MVD proceeding. Because I was

a necessary witness and because I agreed not to appear as required, I admit that co-conspirator 1,

MENDEZ, and I knew that the case and proceeding would likely be dismissed. I further admit

that, because the state criminal charges were dismissed, the fines, fees, and interlock requirement

that would otherwise have applied to the DWI conviction were not imposed. In addition, I admit

that, because the DWI Offender's driver's license was not revoked, the DWI Offender was

allowed to continue to drive without restriction.

18.     I admit that I referred cases to MENDEZ, knowing he was presenting them to co-

conspirator 1, in an effort receive payments for myself. I admit that I kept MVD paperwork and

driver's licenses from DWI suspects and gave them to MENDEZ. I also shared DWI suspect's

phone numbers with MENDEZ. I believe that MENDEZ contacted the DWI Offender I had

referred and alerted them that MENDEZ knew about the DWI arrest (prior to the arrest being

made public). I believe that MENDEZ arranged for the DWI suspect to meet with co-conspirator

1 and/or MENDEZ at co-conspirator 1's law firm. I assumed that co-conspirator 1 and/or

MENDEZ showed the DWI suspect their driver's license (which I had seized in connection to

the DWI arrest and improperly provided to MENDEZ). I understand that co-conspirator 1 and/or

MENDEZ would then inform the DWI suspect that, if they hired co-conspirator 1 as their

attorney, they would not have to worry about the DWI arrest. I further understand that, at times,

co-conspirator 1 and/or MENDEZ would guarantee that the DWI criminal case and MVD process would be dismissed.

19.     I admit that I was aware that other APD Conspiring Officers who had worked in the DWI unit and were part of the scheme would help recruit and train the next generation of Conspiring Officers.

20.     I further admit that MENDEZ discussed with me many of the other Conspiring Officers who had been and were part of the conspiracy. I believe that MENDEZ did so to make me feel more comfortable joining the conspiracy because of the number of senior, and often high-ranking, officers who were also Conspiring Officers, and to ease my concerns about continuing to participate in the conspiracy. I understand and admit that this generational participation, particularly within APD, allowed the conspiracy to take root amongst almost the entire APD DWI unit over a lengthy period of time. I believed that co-conspirator 1 and MENDEZ would ask more senior APD Conspiring Officers to use their positions and influence within APD to try to ensure that DWI officers, including me, were not investigated or disciplined in connection with their illegal activity.

21.     At all times relevant to Counts 3 through 5, of the Information, I admit that as a sworn law enforcement officer employed by APD, I was an agent of APD. I further admit that APD was an agency of the City of Albuquerque, a local government located within the District of New Mexico.

22.     I am now aware that APD received more than $10,000 under a federal program involving a grant, contract, subsidy, loan, guarantee, and insurance during each of the following one-year periods of time:

      a.     February 15, 2021 – February 14, 2022

    b.  February 15, 2022 – February 14, 2023

    c.  February 15, 2023 – February 14, 2024.

  23.  During each of the above-listed one-year periods, I solicited, demanded, accepted, and/or agreed to accept things of value from co-conspirator 1 and MENDEZ.

  24.  I admit that I accepted the items of value intending to be influenced and rewarded in connection with my official duties and in connection with a transaction and a series of transactions involving $5,000 or more during each of the above-listed one-year periods.

  25.  I further admit that, in soliciting, demanding, accepting, and agreeing to accept items of value in my role as an APD sworn law enforcement officer, I intended to be influenced and rewarded in exchange for taking, or for failing to take, actions that would lead to clients of co-conspirator 1's law firm evading criminal and/or administrative consequences related to the clients' DWI arrests.

  26.  I admit that I understood that in exchange for payments in U.S. currency and other items of value, I was expected to take actions including, but not limited to, failing to appear for MVD hearings, failing to file criminal charges, failing to appear for pretrial interviews, and failing to appear for court settings. I knew that these actions were expected to lead to the dismissal of administrative and criminal proceedings despite also knowing that I had a duty to cooperate fully in all aspects of the judicial process and to appear at court hearings, pretrial interviews, or MVD hearings.

  27.  In April 2022, I arrested D.A. and charged them by criminal complaint with DWI. D.A. retained co-conspirator 1 to represent them in their DWI case. After D.A hired and paid co-conspirator 1, I admit that I agreed to accept and accepted property, specifically United States currency, that co-conspirator 1 and MENDEZ received from D.A. with D.A.'s consent. I

accepted and agreed to accept the United States currency, which I was not due in my role as a

sworn law enforcement officer, in exchange for agreeing to act, or fail to act, to ensure that D.A.

would not face administrative or criminal consequences related to their DWI arrest.

28.    I admit that in this conspiracy I acted in concert with other co-conspirators and

intended to do so in order for the scheme to succeed and profit. The Conspiring Officers,

including me, and MENDEZ relied on co-conspirator 1 to handle any aspect of the scheme that

required an attorney presence in court or administrative settings. Without the Conspiring

Officers' agreement and participation, the high success rate of co-conspirator 1 in avoiding

criminal and administrative consequences for DWI Offenders would not have been possible. I

played an important role in the criminal scheme by referring DWI Offenders to co-conspirator 1

and MENDEZ and by accepting payment and items of value in exchange for acting, or failing to

act, to ensure DWI Offenders who were represented by the attorney co-conspirators did not face

administrative or criminal consequences related to their DWI arrests. All members of the

criminal scheme shared in the mutual benefits of the success of the schemes.

29.    I further admit that I now know that the above-described criminal scheme affected

interstate commerce. I admit that non-prosecuted DWI cases affect interstate commerce. I now

understand that fines and fees collected by the courts are sent to the State Treasurer who directs

the money to the correct State of New Mexico fund. The State of New Mexico uses its various

funds to participate in interstate commerce and to purchase items from companies who engage in

interstate commerce. Because the conspiracy allowed DWI Offenders to avoid convictions and

the resulting fines and fees, the amount of money available to be transferred to the State of New

Mexico's funds was decreased and the funds did not collect all the fines and fees to which it was

entitled. Additionally, as a result of the efforts of the conspiracy, many DWI Offenders avoided

11

administrative and criminal requirements to have interlock devices installed on their vehicles. Interlock devices are manufactured by and purchased from companies involved in interstate commerce. Finally, I admit that, when drivers avoid criminal culpability for DWI, some may become more likely to drive while intoxicated in the future, and, the more often that a person drives while intoxicated, the more likely they are to have an accident. I admit that DWI-related accidents account that impact interstate commerce and the use of interstate highways.

30.     I further admit that this conduct occurred in the District of New Mexico.

31.     By signing this agreement, the Defendant admits that there is a factual basis for each element of the crime(s) to which the Defendant is pleading guilty and agrees to affirm the facts set forth above during the plea colloquy. The Defendant agrees that the Court may rely on any of these facts, as well as facts in the presentence report, to determine the Defendant's sentence, including, but not limited to, the advisory guideline offense level.

## **RECOMMENDATIONS**

32.     Pursuant to Rule 11(c)(1)(B), the United States and the Defendant recommend as follows:

        a.     As of the date of this agreement, the Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. Consequently, pursuant to U.S.S.G. § 3E1.1(a), so long as the Defendant continues to accept responsibility for the Defendant's criminal conduct, the Defendant is entitled to a reduction of two levels from the base offense level as calculated under the sentencing guidelines, and if applicable, a reduction of an additional offense level pursuant to U.S.S.G. § 3E1.1(b). Further, the United States is free to

12

withdraw this recommendation if the Defendant engages in any conduct that is inconsistent with acceptance of responsibility between the date of this agreement and the sentencing hearing. Such conduct would include committing additional crimes, failing to appear in Court as required, and/or failing to obey any conditions of release that the Court may set.

b.      The Defendant understands that the above recommendations are not binding on the Court and that whether the Court accepts these recommendations is a matter solely within the discretion of the Court after it has reviewed the presentence report. Further, the Defendant understands that the Court may choose to vary from the advisory guideline sentence. If the Court does not accept any one or more of the above recommendations and reaches an advisory guideline sentence different than expected by the Defendant, or if the Court varies from the advisory guideline range, the Defendant will not seek to withdraw the Defendant's plea of guilty. In other words, regardless of any of the parties' recommendations, the Defendant's final sentence is solely within the discretion of the Court.

33.      Apart from the recommendations set forth in this plea agreement, the United States and the Defendant reserve their rights to assert any position or argument with respect to the sentence to be imposed, including but not limited to the applicability of particular sentencing guidelines, adjustments under the guidelines, departures or variances from the guidelines, and the application of factors in 18 U.S.C. § 3553(a).

34.      Regardless of any other provision in this agreement, the United States reserves the right to provide to the United States Pretrial Services and Probation Office and to the Court any

information the United States believes may be helpful to the Court, including but not limited to information about the recommendations contained in this agreement and any relevant conduct under U.S.S.G. § 1B1.3.

## DEFENDANT'S ADDITIONAL AGREEMENT

35.    The Defendant understands the Defendant's obligation to provide the United States Pretrial Services and Probation Office with truthful, accurate, and complete information. The Defendant represents that the Defendant has complied with and will continue to comply with this obligation.

36.    The Defendant agrees that any financial records and information provided by the Defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

37.    The Defendant agrees that, upon the Defendant's signing of this plea agreement, the facts that the Defendant has admitted under this plea agreement as set forth above, as well as any facts to which the Defendant admits in open court at the Defendant's plea hearing, shall be admissible against the Defendant under Federal Rule of Evidence 801(d)(2)(A) in any subsequent proceeding, including a criminal trial, and the Defendant expressly waives the Defendant's rights under Federal Rule of Criminal Procedure 11(f) and Federal Rule of Evidence 410 with regard to the facts the Defendant admits in conjunction with this plea agreement.

38.    By signing this plea agreement, the Defendant waives the right to withdraw the Defendant's plea of guilty pursuant to Federal Rule of Criminal Procedure 11(d) unless (1) the court rejects the plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(5) or (2) the Defendant can show a fair and just reason as those terms are used in Rule 11(d)(2)(B) for requesting the withdrawal. Furthermore, the Defendant understands that if the court rejects the

14

plea agreement, whether or not the Defendant withdraws the guilty plea, the United States is relieved of any obligation it had under the agreement and the Defendant shall be subject to prosecution for any federal, state, or local crime(s) which this agreement otherwise anticipated would be dismissed or not prosecuted.

39.     The Defendant will not willfully fail to appear for any court appearance in this matter, nor willfully fail to surrender as ordered for service of any sentence.

40.      The Defendant agrees not to engage in conduct that would constitute a new crime. Offenses that would be excluded for sentencing purposes under U.S.S.G. § 4A1.2(c) are not within the scope of this paragraph's agreement.

41.     Defendant agrees not to engage in conduct that would constitute obstructing or impeding the administration of justice under U.S.S.G. § 3C1.1.

**RESTITUTION**

42.     The parties agree that, as part of the Defendant's sentence, the Court will enter an order of restitution pursuant to the Mandatory Victim's Restitution Act, 18 U.S.C. § 3663A, if applicable; if § 3663A is not applicable, the Court will enter an order of restitution pursuant to 18 U.S.C. §§ 3663 and 3664.

43.     No later than July 1 of each year after sentencing, until restitution is paid in full, the Defendant shall provide the Asset Recovery Unit, United States Attorney's Office, 201 Third Street NW, Suite 900, Albuquerque, New Mexico 87102, (1) a completed and signed financial statement provided to the Defendant by the United States Attorney's Office and/or the United States Probation Office and (2) a copy of the Defendant's most recent tax returns.

## WAIVER OF APPEAL AND POST-CONVICTION RIGHTS

44.    The Defendant is aware that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 afford the right to appeal a conviction and the sentence imposed. Acknowledging that, the Defendant knowingly waives the right to appeal the Defendant's conviction(s) and sentence, as well as any order of restitution entered by the Court. This waiver extends to any challenge to the manner in which the sentence was determined or imposed, including the district court's authority to make findings supporting the sentence.

45.    The Defendant also waives the right to appeal any sentence imposed below or within the guideline range upon a revocation of supervised release in this cause number but may nonetheless appeal the determination of the revocation guideline range.

46.    The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c) where such denial rests upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a).

47.    In addition, the Defendant agrees to waive any collateral attack to the Defendant's conviction(s) and any sentence, pursuant to 28 U.S.C. §§ 2241, 2255, or any other extraordinary writ, except on the issue of defense counsel's ineffective assistance.

## GOVERNMENT'S ADDITIONAL AGREEMENT

48.    Provided that the Defendant fulfills the Defendant's obligations as set out above, the United States agrees that the United States will not bring additional criminal charges against the Defendant arising out of the facts forming the basis of the present information.

## VOLUNTARY PLEA

49.    The Defendant agrees and represents that this plea of guilty is freely and voluntarily made and is not the result of force, threats, or promises (other than the promises set

forth in this agreement and any addenda). There have been no promises from anyone as to what sentence the Court will impose. The Defendant also represents that the Defendant is pleading guilty because the Defendant is in fact guilty.

## VIOLATION OF PLEA AGREEMENT

50.     The Defendant agrees that if the Court finds by a preponderance of the evidence that the Defendant has violated any provision of this agreement, the United States will be released from its obligations under the agreement.

51.     The Defendant further agrees that in the event the Court finds that Defendant has breached this plea agreement, thus releasing the United States of its obligations under the agreement, such events do not constitute a fair and just reason under Rule 11(d)(2)(B) for withdrawing the guilty plea(s) entered pursuant to this agreement.

52.     Following the Court's finding of a breach of this agreement by the Defendant, should the United States choose to pursue any charge that was either dismissed or not filed as a result of this agreement, the Defendant waives any defense to that charge or charges based on the lapse of time between the entry of this agreement and the Court's finding of a breach by the Defendant.

## SPECIAL ASSESSMENT

53.     At the time of sentencing, the Defendant will tender to the United States District Court, District of New Mexico, 333 Lomas Blvd. NW, Suite 270, Albuquerque, New Mexico 87102, a money order or certified check payable to the order of the **United States District Court** in the amount of $500 in payment of the special penalty assessment described above.

## ENTIRETY OF AGREEMENT

54.     This document and any addenda are a complete statement of the agreement in this case and may not be altered unless done so in writing and signed by all parties. This agreement is effective upon signature by the Defendant and an Assistant United States Attorney.

AGREED TO AND SIGNED this 12ᵗʰ day of February, 2025.

ALEXANDER M.M. UBALLEZ
United States Attorney


SHANA B. LONG
KATHERINE L. LEWIS
Assistant United States Attorney
201 Third Street, Suite 900
Albuquerque, New Mexico   87103
(505) 346-7274


I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of my client's rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement. In addition, I have explained to my client the elements to each offense to which she/he is pleading guilty. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.


Shah Torgoley
Attorney for the Defendant


I have carefully discussed every part of this agreement with my attorney.   I understand the terms of this agreement, and I voluntarily agree to those terms.   My attorney has advised me of my rights, of possible defenses, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of the relevant sentencing guidelines provisions, and of the consequences of entering into this agreement.


Neill Elsman
Defendant